# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARLOS DEON THOMAS,       )
                                   )
         Petitioner,       )
                                   )
v.                              )       **Case No. 17-CV-0679-GKF-CDL**
                                   )
JIMMY MARTIN,           )
                                   )
         Respondent.       )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1) filed by Petitioner Carlos Deon Thomas, a state inmate appearing pro se.[1]  Thomas seeks federal habeas relief from the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2007-6028.  On consideration of Respondent Jimmy Martin's response (Dkt. 7) in opposition to the petition, Thomas's reply brief (Dkt. 9), records from state court proceedings (Dkts. 7, 8),[2] and applicable law, the Court finds and concludes that Thomas is not entitled to federal habeas relief.  The Court therefore denies the petition.

### BACKGROUND

The State of Oklahoma charged Thomas, in Tulsa County District Court Case No. CF-

---

[1] Because Thomas appears pro se, the Court liberally construes his pleadings.  *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

[2] Thomas requests an evidentiary hearing and asks this Court to direct Martin to supplement the record with materials Thomas asserts are necessary to adjudicate his claims.  Dkt. 1, Pet., at 12, 18-19, 21, 24, 30; Dkt. 9, Reply Br., at 5 n.3, 8-9, 12, 15 n.6, 16, 18, 25.  As further discussed below, *see infra* n.11, the Court will take judicial notice of two affidavits that were considered in state postconviction proceedings but were not included in the record submitted to this Court.  With the exception of the omitted affidavits, the Court finds the existing record is sufficient to adjudicate Thomas's federal claims.  The Court thus denies his requests to expand the record and conduct an evidentiary hearing.

2007-6028, with one count of robbery with a firearm and one count of possession of a firearm, both after former conviction of a felony.  Dkt. 7-1, Plea of Guilty/Summary of Facts, at 1.[3] Thomas's case proceeded to a jury trial on May 20, 2009.  Dkt. 8-2, Tr. Trial, at 1.  After the noon recess on the first day of trial, Thomas, represented by counsel, informed the trial court he was prepared to plead no contest and presented the court with a completed and signed written plea form.  Dkt. 8-2, Tr. Trial, at 2-3 [95-96].  The trial court conducted a thorough plea colloquy with Thomas, ascertained that Thomas understood the concept of entering a blind no contest plea,[4] found a factual basis for the plea, accepted his plea, entered a finding of guilt as to both charges, ordered him held without bond, and set the matter for sentencing.  Dkt. 8-2, Tr. Trial, at 3-10 [96-103].

Following a hearing on July 6, 2009, the trial court sentenced Thomas to 40 years' imprisonment on the robbery conviction and 10 years' imprisonment on the firearm conviction, with both sentences to be served concurrently.  Dkt. 8-3, Tr. Sentencing Hr'g, at 1, 9.  The trial court advised Thomas that he had ten days to file a motion to withdraw his plea and that if the motion was denied he would have ten days thereafter to file a notice of appeal.  Dkt. 8-3, Tr. Sentencing Hr'g, at 9.

Thomas timely moved to withdraw his plea, alleging the plea was "not knowing, voluntary and intelligently made."  Dkt. 7-2, Mot. to Withdraw Plea, at 1.   The trial court held a hearing on

---

[3] The Court's citations generally refer to the CM/ECF header pagination.  When citing a transcript, the Court provides original transcript page numbers in brackets if those page numbers differ from the CM/ECF header pagination.

[4] A "blind" plea "is a plea in which there is no binding agreement on sentencing, and punishment is left to the judge's discretion."  *Medlock v. State*, 887 P.2d 1333, 1337 n.2 (Okla. Crim. App. 1994).  Under Oklahoma law, a no contest plea has the same legal effect as a guilty plea.  Okla. Stat. tit. 22, § 513.

July 28, 2009, and denied the motion.  Dkt. 8-4, Tr. Mot. Hr'g, at 2, 11 [3, 10].  At the conclusion

of the hearing, Thomas's trial counsel stated he would "do the initial appeal paperwork."  Dkt. 8-

4, Tr. Mot. Hr'g, at 11 [10].  Counsel did not, however, perfect a timely appeal.

Over six years later, on October 14, 2015, Thomas filed an application for postconviction

relief seeking an out-of-time certiorari appeal.  Dkt. 1, Pet., at 27, 31.  The state district court

recommended granting the application, and the Oklahoma Court of Criminal Appeals (OCCA)

granted Thomas's application on November 13, 2015.  Dkt. 1, Pet., at 40.

Represented by appellate counsel, Thomas perfected a certiorari appeal raising one issue—

he claimed he "should be permitted to withdraw his plea because it was not entered knowingly and

voluntarily, and the plea agreement fails the *Snug Harbor* standard."  Dkt. 7-3, Pet'r's Br., at 2;

*see Snug Harbor Ass'n v. State*, 444 P.2d 249, 251-52 (Okla. Crim. App. 1968) (suggesting trial

court should grant motion to withdraw plea if "it appears that such plea may have been entered as

a result of inadvertence, ignorance, misunderstanding, misapprehension, or without deliberation,

and it is apparent that application to withdraw plea is made in good faith and not for the purpose

of delay or to defeat the ends of justice").  In an unpublished summary opinion filed August 23,

2016, the OCCA affirmed the denial of Thomas's motion to withdraw the plea and denied his

certiorari appeal.  Dkt. 7-4, Summ. Op., at 1-2.

Proceeding pro se, Thomas filed an application for postconviction relief on February 17,

2017, seeking relief on three claims.  Dkt. 7-5, Appl., at 1.  First, he asserted he was denied his

Sixth Amendment right to the effective assistance of appellate counsel because counsel failed to

argue that the trial court erred in concluding Thomas was competent to enter a plea when the court

did not consult medical professionals regarding how Thomas's use of marijuana and Lortab[5] may have affected his ability to understand the consequences of his plea.  Dkt. 7-5, Appl., at 6-8. Second, he asserted he was denied his Sixth Amendment right to the effective assistance of trial counsel because (1) counsel "failed to protect" Thomas's interests and "forced" him to plead no contest while Thomas was under the influence of mind-altering drugs and (2) abandoned him by failing to perfect a timely certiorari appeal.  Dkt. 7-5, Appl., at 10-15.  Third, Thomas argued he was denied his Fifth, Sixth, and Fourteenth Amendment rights to due process and equal protection because the trial court made "a self-imposed competency determination" without consulting a mental health professional or conducting a hearing to determine whether Thomas was competent to enter a plea.  Dkt. 7-5, Appl., at 17-22.  The state district court denied Thomas's application for postconviction relief on July 18, 2017.  Dkt. 7-6, Order, at 1, 4-7.  Thomas filed a postconviction appeal on August 14, 2017.  Dkt. 7-7, Appellant's Br., at 1.  In an unpublished order filed October 31, 2017, the OCCA affirmed the state district court's order denying postconviction relief.  Dkt. 7-8, OCCA Order, at 1.

Thomas filed the instant petition on December 18, 2017, seeking federal habeas relief on four grounds.  In ground one, he claims he was denied his constitutional right to due process and should be allowed to withdraw his plea because he "did not knowingly and voluntarily enter his blind plea as he was under the influence of mind-altering drugs [when] he entered his plea."  Dkt. 1, Pet., at 8-11.  In grounds two and three, he claims he was denied his constitutional right to the effective assistance of appellate counsel because counsel failed to challenge the trial court's determination that he was competent to enter the plea and failed to argue that trial counsel

---

[5] Lortab is a brand name of a prescription painkiller that, in tablet form, contains acetaminophen and hydrocodone.  www.pdr.net.

performed deficiently and prejudicially by coercing him to take the plea and failing to perfect a certiorari appeal.  Dkt. 1, Pet., at 16-21.  In ground four, he claims he was denied his constitutional right to due process because the trial court erred in determining he was competent to enter a plea without first consulting medical or mental health experts and holding a competency hearing.  Dkt. 1, Pet., at 22-26.

In response to the petition, Martin contends 28 U.S.C. § 2254(d) bars federal habeas relief as to all four claims.  Dkt. 7, Resp., at 7, 18, 26.

## DISCUSSION

Because Thomas is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of his claims.  Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addition, before a federal court may grant habeas relief, the state prisoner must exhaust available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  And, in most cases, the prisoner must file a federal habeas petition within one year of the date on which his convictions became final.  *See* 28 U.S.C. § 2244(d)(1).  Martin concedes, and the Court finds, that Thomas exhausted available state remedies by presenting his claims to the OCCA through his certiorari and postconviction appeals and that Thomas timely filed his habeas petition.[6]  Dkt. 7,

---

[6] Under ordinary circumstances, Thomas's conviction would have been final when the time expired for him to perfect a certiorari appeal.  *See Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) (discussing appeal process in Oklahoma for defendants who plead guilty or no contest). However, when the OCCA granted Thomas leave to file a certiorari appeal out of time, the OCCA effectively rendered "his judgment not yet 'final' for purposes of 28 U.S.C. § 2244(d)(1)(A)." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009).

Resp., at 2.

Martin contends, however, that 28 U.S.C. § 2254(d) bars relief as to all four claims.  Dkt. 7, Resp., at 7, 18, 26.  Under § 2254(d), the AEDPA limits the ability of a federal court to grant habeas relief when a state prisoner's federal claims were "adjudicated on the merits in State court proceedings."  With respect to such claims, a federal court may not grant habeas relief unless the prisoner first demonstrates that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, 28 U.S.C. § 2254(d)(2).

Habeas review under § 2254(d)(1) focuses on how the state court applied clearly established federal law in reaching its decision on a federal claim.  For purposes of habeas review, "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it 'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)).  A state-court decision involves an unreasonable application of clearly established federal law "if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fairchild v. Trammell*, 784

F.3d 702, 711 (10th Cir. 2015) (quoting *Williams*, 529 U.S. at 407-08).   A state-court decision must be objectively unreasonable, not merely incorrect.  *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (noting that the "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists'" (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006))).

Under § 2254(d)(2), habeas review focuses on the state court's determination of the facts underpinning the court's decision on the federal claim or claims.  A state prisoner can establish that a state court decision rests on an unreasonable determination of the facts if the prisoner shows either that the state court "plainly and materially misstated the record" or "that reasonable minds could not disagree that the finding was in error."  *Smith*, 824 F.3d at 1250.  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).

In applying § 2254(d)'s "highly deferential standard," a federal court must give the state court's decision the "benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  In addition, the federal court must presume the correctness of the state court's factual findings unless the prisoner rebuts that presumption "by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).   Section 2254(d) thus "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Moreover, even if the prisoner makes the threshold showings necessary to overcome that barrier, the prisoner is not necessarily entitled to habeas relief.  *Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014).  Rather, the federal court will review the prisoner's federal claims de novo—without deference to the state court's decision—to determine whether the prisoner is entitled to habeas relief.  *Id.* at 670-71.

## I.      Due-process claim (grounds one and four)

For two reasons, Thomas claims his convictions were obtained in violation of his constitutional right to due process.  First, in ground one, Thomas alleges his no contest plea was not knowing and voluntary because he was under the influence of mind-altering drugs—marijuana and Lortab—when he entered the plea.  Dkt. 1, Pet., at 8-11.[7]  Second, in ground four, Thomas contends the trial court should have consulted medical or mental health experts regarding the effects of Thomas's use of mind-altering substances on his ability to understand the proceedings and should have held a competency hearing before it determined Thomas was competent to enter the plea.  Dkt. 1, Pet., at 22-26.

The OCCA considered and rejected Thomas's ground one argument on certiorari appeal.  The OCCA stated that it considered "the original record, transcripts, motions and the appellate brief" and found that "[t]he trial court correctly followed the guidelines of *King v. State*, 1976 OK CR 103, 553 P.2d 529" when it accepted the plea.[8]  Dkt. 7-4, Summ. Op., at 2.  And, in rejecting Thomas's assertion that his plea was not knowing and voluntary, the OCCA stated,

---

[7] Thomas also asserts, in ground one, that the trial court abused its discretion in denying his motion to withdraw the plea by failing to properly consider the standards set forth in *Snug Harbor*.  Dkt. 1, Pet., at 11-13.  As Martin argues, whether the trial court abused its discretion by failing to properly apply *Snug Harbor*—a state court decision—is a matter of state law.  Dkt. 7, Resp., at 7.  On habeas review, this Court considers only whether the OCCA's decisions on Thomas's federal claims comport with clearly established federal law.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  Thus, the Court considers Thomas's *Snug Harbor* argument only to the extent it can be liberally construed as further support for his due-process claim.

[8] In *King v. State*, the OCCA established procedures for trial courts to follow when accepting guilty pleas.  As relevant here, those procedures include determining the defendant's competence "by appropriate interrogation of the defendant" and through observation of "the defendant's demeanor before the court," advising the defendant of the nature and consequences of a guilty plea, and determining whether the defendant's plea is voluntary and free from coercion.  *King*, 553 P.2d at 534-36.

> Thomas entered a blind plea with no agreement regarding the sentence he would receive, and the trial court satisfied itself that Thomas had a full understanding of the nature and consequences of his plea and that he was competent to enter the plea. Thomas has not met his burden of showing that the plea was not knowingly and voluntarily entered.

Dkt. 7-4, Summ. Op., at 2.

On postconviction appeal, the OCCA found that Thomas waived his substantive claim, asserted here in ground four, that the trial court erred in determining, without first consulting medical experts, that Thomas was competent to enter a plea. Dkt. 7-8, OCCA Order, at 2. The OCCA nevertheless considered that claim under the rubric of his ineffective-assistance-of-appellate-counsel claim, asserted here in ground two, and found it lacked merit. The OCCA stated,

> Petitioner's propositions of error all relate to his contention that appellate counsel failed to adequately raise the claim Petitioner was not competent to enter his plea of no contest because he was under the influence of marijuana and [L]ortab. The issue was raised and rejected in Petitioner's direct appeal. Petitioner has not provided any medical or mental health evidence to support his assertion that he was not competent when he entered his plea.

Dkt. 7-8, OCCA Order, at 2-3 (internal citation omitted).

Thomas contends the OCCA's decisions are contrary to clearly established federal law because it is clear from the record that his plea was not knowing and voluntary and that he was not competent to enter the plea. Dkt. 1, Pet., at 8-11, 22-26; Dkt. 9, Reply Br., at 3-9, 19-25.

Martin contends Thomas is not entitled to relief on the due-process claim asserted in grounds one and four of the petition because the OCCA's adjudication of that claim did not result in a decision that is either contrary to or based on an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts presented in state court proceedings. Dkt. 7, Resp., at 7-17, 23-26.

The Court agrees that § 2254(d) bars habeas relief on the due-process claim asserted in grounds one and four. A federal court reviewing a guilty plea taken in state court may set aside

the plea only if it fails to satisfy due process.  To comport with due process, a plea must be knowing, voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 747-78 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))).  At a minimum, for a plea to be knowing and intelligent, the defendant must understand the nature of the charges against him, the possible penalties, and the fact that he is waiving several constitutional rights by entering a plea. *Brady*, 397 U.S. at 756-57; *Boykin*, 395 U.S. at 242-44; *see also United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) ("The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences.").  A defendant's decision to enter a plea must also be voluntary; thus, a plea is constitutionally infirm if it is the product of coercion. *See Euziere v. United States*, 249 F.2d 293, 295 (10th Cir. 1957) ("A plea of guilty interposed as the result of coercion is not consistent with due process and therefore a judgment and sentence imposed pursuant to such a plea cannot stand.").

And, just as "a criminal defendant may not be tried unless he is competent," a criminal defendant "may not . . . plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).  The standard for competence either to stand trial or to plead guilty is the same:  the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 391, 399, 402 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).  In either situation, "[t]rial courts have the obligation of conducting a hearing whenever there is sufficient doubt concerning a defendant's competence."  *Godinez*, 509 U.S. at 408

(Kennedy, J., concurring in part and concurring in the judgment) (citing *Drope v. Missouri*, 420 U.S. 162, 180-181 (1975)).

Ultimately, the determination that a guilty plea is knowing and voluntary, and therefore comports with due process, "is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings." *Fields v. Gibson*, 277 F.3d 1203, 1212 (10th Cir. 2002).

Here, the records from state-court proceedings show that the OCCA applied clearly established federal law to factual findings that are amply supported by the record, and did so in an objectively reasonable manner, when it rejected Thomas's assertions that his plea was not knowing and voluntary and that he was not competent to enter the plea.

The transcript from the plea hearing reflects that after the noon recess of the first day of trial, Thomas presented a written plea form to the trial court and announced that he was prepared to plead no contest.  Dkt. 8-2, Tr. Trial, at 2-3 [95-96].  The trial court inquired whether Thomas understood that he would be waiving his right to a jury trial, and Thomas stated, "Yes, sir."  Dkt. 8-2, Tr. Trial, at 3 [96].  Thomas denied being "under the influence of any drug, medication, or alcohol."  Dkt. 8-2, Tr. Trial, at 3 [96].  After the trial court described the charges and potential sentences, Thomas verbalized that he understood the nature of the charges against him and the range of punishment for each crime.  Dkt. 8-2, Tr. Trial, at 3-4 [96-97].  Through additional questions from the court, Thomas confirmed that the State's evidence, if believed by the jury, could support a conviction on both charges.  Dkt. 8-2, Tr. Trial, at 4-6 [97-99].  The court then confirmed that Thomas understood he would be entering a blind plea "without a recommendation from the State," that the court would therefore sentence Thomas "somewhere within the range provided by Oklahoma law," and that the court would consider information provided in the

presentence investigation report when it determined an appropriate sentence.  Dkt. 8-2, Tr. Trial, at 6-7 [99-100].  Finally, the court advised Thomas that upon his conviction for robbery with a firearm, Thomas would be required to serve 85 percent of the sentence imposed "without benefit of early parole release, probation, or good time credits to reduce the time in custody," and Thomas verbalized his understanding.  Dkt. 8-2, Tr. Trial, at 7 [100].  Following the plea colloquy, the trial court accepted Thomas's plea.  Dkt. 8-2, Tr. Trial, at 8 [101].

Thomas first challenged the validity of his plea when he moved to withdraw the plea after his sentencing hearing.  At the hearing on his motion to withdraw the plea, Thomas testified that during the noon recess on the first day of trial, immediately before he entered his no contest plea, he went to his house, smoked marijuana and ingested Lortab.  Dkt. 8-4, Tr. Mot. Hr'g, at 6, 9 [5, 8].  He further testified that someone interacting with him "probably" would have seen him "exhibiting" "visible signs" that he had used these substances.  Dkt. 8-4, Tr. Mot. Hr'g, at 7 [6].  When asked to explain further what signs might have been apparent to others, Thomas testified that these substances affected his ability to "understand the gravitude [sic] of the trial and everything that was going to take place without the jury" and "slowed [his] thinking down a little bit," but he admitted his "speech pattern" would have been the same.  Dkt. 8-4, Tr. Mot. Hr'g, at 6-7 [5-6].  On cross-examination, Thomas testified that he remembered going over questions and completing the written plea form with counsel before he entered the plea.  Dkt. 8-4, Tr. Mot. Hr'g, at 10 [9].  The trial court admitted the written plea form at the hearing as Defendant's Exhibit 1.  Dkt. 8-4, Tr. Mot. Hr'g, at 10-11 [9-10].

Statements from Thomas's written plea form indicate that Thomas was not "currently taking any medications or substances which affect [his] ability to understand [the plea] proceedings," that he had never "been treated by a doctor or health professional for mental illness

or confined in hospital for mental illness," that he understood the rights he would be waiving by entering a plea of no contest, that he had not "been forced, abused, mistreated, or promised anything" in return for his plea, and that he was entering the no contest plea of his "own free will and without any coercion or compulsion of any kind." Dkt. 7-1, Plea of Guilty/Summary of Facts, at 1-3.[9]  In the portion of the form describing the factual basis for the plea, Thomas did not admit that he had a gun when he took money from the victim, but, consistent with his plea of no contest, he conceded that if the jury believed the State's witnesses over Thomas, "there is enough evidence to convict [him] of having a gun." Dkt. 7-1, Plea of Guilty/Summary of Facts, at 3.

At the conclusion of the hearing, the trial court denied Thomas's motion to withdraw the plea, stating,

> This is a case which I remember well, Mr. Thomas.  I remember you particularly.  And I remember your demeanor and your responses to my questions.  And I believe, without any doubt, that you knew what I was saying and you understood the gravity of the decision you were making.  If you were smoking marijuana, that was a very foolish thing to be doing right before your trial.  But, nonetheless, it's not going to interfere with what I believe is your knowing and informed decision.

> So I will find that based upon the facts set out in the exhibit, Defendant's 1, and my personal recollection of you and your demeanor, and the way the questions were asked and the answers given, I will overrule your motion to withdraw, with exception.  And you'll be advised by counsel as to your appellate rights with respect to that decision.  Essentially, you have ten days to file a notice of appeal, predicated on my decision today.

---

[9] On the written plea form, plea counsel circled "Yes" next to question number 29, which asks whether Thomas was "forced, abused, mistreated, or promised anything by anyone" to enter the plea.  Dkt. 7-1, Plea of Guilty/Summary of Facts, at 3.  But in his reply brief, Thomas asserts there were at least four mistakes on the written plea form and expressly states that the answer to question number 29 "was incorrectly marked."  Dkt. 9, Reply Br., at 6-7.  Based on Thomas's clarification of this point, the Court finds that the written plea form also supports the OCCA's decision that Thomas's plea was voluntary. Moreover, in light of the trial court's questions and Thomas's answers during the plea hearing, the Court is not persuaded that other mistakes on the written form that Thomas identifies in his reply brief undermine the OCCA's decision as to his due-process claim.

Dkt. 8-4, Tr. Mot. Hr'g,, at 11 [10].

Thomas renewed his challenge to the validity of his plea through the certiorari appeal he filed in the OCCA.  There, he argued, again, that his plea was not knowing and voluntary because he entered it while "under the influence of mind-altering drugs."  Dkt. 7-3, Pet'r's Br., at 8-10. Relying on *Snug Harbor*, Thomas further argued that the trial court abused its discretion when it denied his motion to withdraw the plea because Thomas's decision was "sudden" and "entered due to ignorance, misunderstanding, and without deliberation."  Dkt. 7-3, Pet'r's Br., at 7, 10-12.

As previously stated, the OCCA found that the trial court complied with state law procedural requirements for accepting the plea and the OCCA rejected Thomas's substantive claim that his plea was not knowing and voluntary, stating,

> Thomas entered a blind plea with no agreement regarding the sentence he would receive, and the trial court satisfied itself that Thomas had a full understanding of the nature and consequences of his plea and that he was competent to enter the plea. Thomas has not met his burden of showing that the plea was not knowingly and voluntarily entered.

Dkt. 7-4, Summ. Op., at 2.

Thomas also challenged the validity of his plea through his postconviction appeal.  There, however, he primarily argued that appellate counsel did not adequately challenge the validity of his plea.  In addition, he argued the trial court should have held a hearing or consulted experts to determine his competency to enter the plea.  In the order affirming the denial of postconviction relief, the OCCA cited state law and reasoned that Thomas's "plea of no contest foreclosed his right to object to any and all irregularities in the proceedings and waived his right to raise all non-jurisdictional defenses."  Dkt. 7-8, OCCA Order, at 1-2.  The OCCA found that "with the exception of his claim of ineffective appellate counsel, [Thomas's] current grounds for relief either were or could have been raised in his direct appeal proceedings and are therefore waived or procedurally barred."  Dkt. 7-8, OCCA Order, at 2.  The OCCA understood Thomas's Sixth Amendment claim

to assert "that appellate counsel failed to adequately raise the claim [he] was not competent to enter his plea of no contest because he was under the influence of marijuana and [L]ortab" and "failed to adequately raise the claim that [his] trial counsel coerced him into entering his plea." Dkt. 7-8, OCCA Order, at 2-3.   The OCCA nonetheless determined that issues relating to Thomas's competency to enter the plea and the voluntariness of the plea were "raised and rejected" in Thomas's certiorari appeal.   Dkt. 7-8, OCCA Order, at 3.   The OCCA also noted that Thomas failed to "provide[] any medical or mental health evidence to support his assertion that he was not competent when he entered his plea" or any evidence to support his assertion that plea counsel coerced him to take the plea.   Dkt. 7-8, OCCA Order, at 3.   The OCCA thus concluded that Thomas failed to "establish[] that the outcome of his direct appeal proceedings would have or should have been different" had appellate counsel raised the issues Thomas identified as inadequately raised. Dkt. 7-8, OCCA Order, at 3.

On this record, the Court cannot find that the OCCA's adjudication of Thomas's due-process claim resulted in decisions that are contrary to clearly established federal law.   And this is true despite the fact that neither the OCCA's summary opinion denying his certiorari appeal nor its order denying postconviction relief expressly mentioned controlling Supreme Court decisions discussing the due process requirements relating to a guilty plea.   *See Fairchild*, 784 F.3d at 711 ("It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam))).

Likewise, the Court cannot find that the OCCA's adjudication of Thomas's due-process claim involves an unreasonable application of clearly established federal law or rests on an unreasonable determination of the facts.   Though they are not conclusive on the question of

whether his plea satisfies due process, Thomas's in-court statements made during the plea hearing as to the knowing and voluntary nature of his pleas are accorded a strong presumption of reliability. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   Courts also may consider answers a defendant has provided on written forms relevant to the plea. *Hoffman v. Young*, 23 F. App'x 885, 887 (10th Cir. 2001) (unpublished).[10]   The record demonstrates that the trial court considered Thomas's in-court statements, Thomas's demeanor, and his statements on the written plea form, when the court accepted his plea and when the court (presided over by the same judge who accepted the plea) denied his motion to withdraw the plea.   In denying the motion to withdraw the plea, the trial court determined that, even accepting Thomas's testimony that he had smoked marijuana and ingested Lortab immediately before entering his plea, neither Thomas's in-court statements, the statements in his written plea form, nor his demeanor during the plea colloquy suggested he did not understand the plea proceedings, that he was not competent to enter the plea, or that his plea was anything other than knowing and voluntary.   Dkt. 8-4, Tr. Mot. Hr'g., at 11 [10].   More importantly, the OCCA considered these same portions of the record in affirming the trial court's decisions denying the motion to withdraw the plea and denying postconviction relief. On the facts supported by the state-court record, it was not objectively unreasonable for the OCCA to conclude that Thomas's plea was knowing and voluntary.   Further, as the OCCA reasoned, there is no evidence in the record to support Thomas's assertion that the trial court should have had reason to believe that a competency hearing, or expert testimony, was necessary to determine that

---

[10] The Court cites this unpublished decision for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Thomas was competent to enter a no contest plea.[11]

Based on the foregoing, the Court finds and concludes that the OCCA's rejection of Thomas's due-process claim was neither contrary to nor involved an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. The Court therefore denies the petition as to the due-process claim asserted in grounds one and four.

## II.    Ineffective-assistance-of-appellate-counsel claim (grounds two and three)

For two reasons, Thomas claims he was denied his constitutional right to the effective assistance of appellate counsel.  First, in ground two, he contends appellate counsel should have argued that the trial court erred in determining, without first consulting medical or mental health experts, that Thomas was competent to enter a plea while he was under the influence of marijuana and Lortab.  Dkt. 1, Pet., at 13-15.  Second, in ground three, he contends appellate counsel should have argued that trial counsel provided ineffective assistance by forcing Thomas to enter a plea when he was under the influence of mind-altering drugs.  Dkt. 1, Pet., at 16-21.

The OCCA considered and rejected the ineffective-assistance-of-appellate-counsel claim

---

[11] In support of his claims that his use of marijuana and Lortab rendered him incompetent to enter the plea, and that appellate counsel failed to adequately argue these issues on appeal, Thomas cites two affidavits he submitted to the state district court with his application for postconviction relief.  Dkt. 1, Pet., at 9 n.3; Dkt. 9, Reply Br., at 5.  As Thomas contends, Martin failed to include the affidavits when he submitted records from state court proceedings.  Dkt. 9, Reply Br., at 5 n.3.  But it is clear from the record that the state district court considered those affidavits in denying postconviction relief.  Dkt. 7-6, Order, at 2.  The Court thus finds it appropriate to take judicial notice of the affidavits which are available to the public through court records posted on the Oklahoma State Courts Network.  *See* Petitioner's Appendix to his Exhibits (filed Feb. 15, 2017), *State v. Thomas*, Case No. CF-2007-6028, oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2007-6028&cmid=2047456, last visited Feb. 17, 2021.  Nevertheless, these sworn affidavits, signed in 2017 by Thomas and Thomas's girlfriend and describing events that occurred before or during the 2009 plea hearing, do not persuade this Court that the OCCA either unreasonably applied the law or unreasonably determined the facts when it rejected his federal claims.

on postconviction appeal.  Citing *Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013), the

OCCA stated,

> In order to establish a claim of ineffective assistance of appellate counsel, Petitioner must show both (1) deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for appellate counsel's unprofessional error, the result of his appeal would have been different.

Dkt. 7-8, OCCA Order, at 2.  The OCCA understood Thomas's claim as asserting "that appellate

counsel failed to adequately raise the claim [he] was not competent to enter his plea of no contest

because he was under the influence of marijuana and [L]ortab" and "failed to adequately raise the

claim that [his] trial counsel coerced him into entering his plea." Dkt. 7-8, OCCA Order, at 2-3.[12]

Though not entirely clear, it appears the OCCA found no deficient performance and no resulting

prejudice.  The OCCA determined that issues relating to Thomas's competency to enter the plea

and the voluntariness of the plea were "raised and rejected" on Thomas's certiorari appeal.  Dkt.

7-8, OCCA Order, at 3.  The OCCA also noted that Thomas failed to "provide[] any medical or

mental health evidence to support his assertion that he was not competent when he entered his

plea" or any evidence to support his assertion that plea counsel coerced him to take the plea.  Dkt.

7-8, OCCA Order, at 3.  Finally, the OCCA found that Thomas failed to "establish[] that the

outcome of his direct appeal proceedings would have or should have been different" had appellate

---

[12] Thomas also alleged in his application for postconviction relief, and reasserts in ground three of his petition, that trial counsel was ineffective for failing to perfect a timely certiorari appeal. Dkt. 7-5, Appl., at 15; Dkt. 1, Pet., at 20-21.  It does not appear that the OCCA addressed that particular argument on postconviction appeal.  But the OCCA had no reason to do so.  As Martin points out, the OCCA remedied trial counsel's abandonment of Thomas by granting him leave to file an out-of-time certiorari appeal, and the state district court appointed appellate counsel to represent Thomas in pursuing the out-of-time certiorari appeal.  Thomas acknowledges this in his petition. Dkt. 1, Pet., at 21.  By the time appellate counsel filed the out-of-time certiorari appeal, any issue relating to trial counsel's failure to perfect an appeal was moot.  Thus, appellate counsel could not have been faulted, much less found constitutionally ineffective, for failing to raise that issue.

counsel raised the issues Thomas identified as inadequately raised.  Dkt. 7-8, OCCA Order, at 3.

Liberally construing the petition and reply brief, the Court finds that Thomas appears to contend the OCCA's decision on his Sixth Amendment claim is either contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).  Dkt. 1, Pet., at 13-21; Dkt. 9, Reply Br., at 10-18.

Martin contends Thomas is not entitled to relief on the ineffective-assistance-of-appellate-counsel claim asserted in grounds two and three of the petition because the OCCA's adjudication of that claim did not result in a decision that is either contrary to or involves an unreasonable application of *Strickland*, or based on an unreasonable determination of the facts presented in state court proceedings.  Dkt. 7, Resp., at 19-31.

The Court agrees that § 2254(d) bars habeas relief on the ineffective-assistance-of-appellate-counsel claim asserted in grounds two and three.  By citing its own decision in *Logan*, the OCCA correctly identified the governing legal standard from *Strickland* that requires a reviewing court to consider (1) whether appellate counsel performed in an objectively unreasonable manner and (2) whether there is "a reasonable probability that but for" appellate counsel's errors, the result of the appeal would have been different.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (noting that *Strickland*'s two-prong analysis applies to claims that appellate counsel provided ineffective assistance); *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (same).  Thomas therefore cannot show that the OCCA's decision is contrary to clearly established law.

Nor can he show that the OCCA applied *Strickland* in an objectively unreasonable manner. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (noting that on federal habeas review under § 2254(d)(1), the federal court's assessment of a *Strickland* claim is "doubly deferential" and "[t]he

question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold'" (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  In determining whether appellate counsel was ineffective for failing to raise an issue on appeal, the reviewing court generally must "look to the merits of the omitted issue."  *Cargle*, 317 F.3d at 1202 (quoting *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001)).  And, "if the issue is meritless, its omission will not constitute deficient performance."  *Id.*

Here, the OCCA found that appellate counsel did not perform deficiently with respect to either omitting or asserting issues regarding whether Thomas's use of marijuana and Lortab rendered him incompetent to enter the plea and whether Thomas's trial counsel coerced him to take the plea.  The OCCA reasoned that the competency issue "was raised and rejected in [Thomas's] direct appeal" and "the voluntariness of [his] plea was addressed in his direct appeal."  Dkt. 7-8, OCCA Order, at 2-3.  The OCCA also found that Thomas presented no additional evidence on postconviction appeal "to support his assertion that he was not competent when he entered his plea."  Dkt. 7-8, OCCA Order, at 3.  Finally, the OCCA concluded that Thomas failed to establish any prejudice resulting from appellate counsel's allegedly deficient performance.  Dkt. 7-8, OCCA Order, at 3.

The Court has carefully considered Thomas's arguments regarding appellate counsel's performance, but the record does not support his position that the OCCA either unreasonably applied *Strickland* or unreasonably determined the facts relevant to his ineffective-assistance-of-appellate-counsel claim.  The Court therefore denies the petition as to the ineffective-assistance-of-appellate-counsel claim asserted in grounds two and three of the petition.

*CONCLUSION*

Because Thomas has not established that he is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. § 2254(a), the Court denies his petition for writ of habeas corpus.  In addition, because reasonable jurists would not debate this Court's assessment of Thomas's constitutional claims, the Court declines to issue a certificate of appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.     Thomas's requests to expand the record and conduct an evidentiary hearing are **denied**.

2.     The petition for writ of habeas corpus (Dkt. 1) is **denied**.

3.     A certificate of appealability is **denied**.

4.     A separate judgment shall be entered in this matter.

   **DATED** this 19th day of February 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE